UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JERRY LEE KATT, JR.,

                   Petitioner,

v.

SHERRY L. BURT,

              Respondent.

_____/

Case No. 1:19-cv-1002

Honorable Janet T. Neff

## **REPORT AND RECOMMENDATION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. The Respondent has filed an answer (ECF No. 5), moving to dismiss the petition as untimely, along with the state-court record (ECF Nos. 6-1 to 6-25) pursuant to Rule 5, Rules Governing § 2254 Cases.  After reviewing the state court record, I conclude that the petition is timely. Accordingly, I recommend that Respondent's motion to dismiss be denied.  Nonetheless, upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## **Discussion**

### I.    **Factual Allegations**

        Petitioner Jerry Lee Katt, Jr. is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  On February 20, 2014, following a three-day jury trial in the Berrien County Circuit Court, Petitioner was convicted of four counts of first-degree criminal sexual conduct (CSC I), in

violation of Mich. Comp. Laws § 750.520b(1)(a), and three counts of second-degree criminal

sexual conduct, in violation of Mich. Comp. Laws § 750.520c(1)(a).  On March 31, 2014, the court

sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent

prison terms of 60 to 90 years on each CSC-I count and 19 to 60 years on each CSC-II count.

      The two victims were under the age of 13 years at the time Petitioner assaulted

them.  They both testified to multiple acts of anal and oral penetration.  (Pet'r's Appeal Br., ECF

No. 6-22, PageID.1125-1127.)  The victims were examined by a sexual assault nurse examiner.

She responded to a question from the prosecutor regarding the timing of the abuse according to

one of the victims:  "I believe he said it was after . . . [Petitioner] got out of prison, which is about

2009, he said . . . ."  (Trial Tr. II, ECF No. 6-11, PageID.629.)

      Petitioner's counsel moved for a mistrial.  The trial court denied the motion.  The

court acknowledged there may be some prejudice as a result of the comment, but the court provided

a curative instruction.  The jury listened to about a day and a half of testimony and deliberated for

about an hour and a half before finding Petitioner guilty of all counts.

      Petitioner, with the assistance of counsel, directly appealed his convictions raising

one issue:  the trial court erred in denying a mistrial when a nurse examiner witness referred to

Petitioner's earlier incarceration.  The court of appeals affirmed the trial court by unpublished

opinion issued July 23, 2015.  (Mich. Ct. App. Op., ECF No. 6-22, PageID.1104-1105.)  Petitioner

then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same

issue.  (Pet'r's Appl. for Leave to Appeal, ECF No. 6-24, PageID.1291.)  That court denied leave

by order entered March 8, 2016.[1]  (Mich. Order, ECF No. 6-24, PageID.1251.)  Petitioner did not file a petition for writ of certiorari in the United States Supreme Court.  (Pet., ECF No. 1, PageID.3.)

On December 9, 2016, Petitioner filed his petition in *Katt I* raising four issues—issues that he had not raised on direct appeal.  *Katt v. Burt*, No. 1:16-cv-1470 (W.D. Mich. 2016) (herein *Katt I*) (Pet., ECF No. 1, PageID.6-10.)  By opinion entered January 30, 2017, the Court dismissed the petition for failure to exhaust available state court remedies.  *Katt I* (Op., ECF No. 5.)

Shortly before Petitioner filed the *Katt I* petition, he returned to the trial court and, on November 23, 2016, filed a document titled "Pro Se Request for Records."  (ECF No. 6-14.) Attached to the "Request" was argument regarding a challenge to the trial court's jurisdiction.  (*Id*., PageID.875-879.)  It is not at all clear that Petitioner intended to raise that issue for the trial court to resolve; nonetheless, giving Petitioner the benefit of every doubt, the trial court considered the matter as a motion for relief from judgment.  (Berrien Cnty. Cir. Ct. Order, ECF No. 6-15, PageID.885.)  The court denied the motion as meritless by order entered March 15, 2017. (*Id*., PageID.884-888.)  There is nothing in the record that suggests that Petitioner ever sought leave to appeal the denial of that motion.

Petitioner returned to the trial court with a new motion for relief from judgment filed on May 26, 2017.  (ECF No. 6-16.)  By way of his motion, Petitioner raised six new issues for the trial court's consideration.  (*Id*., PageID.908.)  Petitioner filed a motion to withdraw that motion on July 10, 2017.  (Berrien Cnty. Cir. Ct. Public Access Case Event Report, ECF No. 6-1,

---

[1] Petitioner filed a late motion for reconsideration which was returned by the Michigan Supreme Court Clerk as untimely.  (Nov. 21, 2016, Mich. Letter, ECF No. 6-24, PageID.1252.)

PageID.61.)  The trial court granted that relief by order entered July 17, 2017.  (Berrien Cnty Cir. Ct. Order, ECF No. 6-17.)

Petitioner resubmitted the motion for relief from judgment, raising the same six issues, on October 10, 2017.  (Mot. for Relief from J., ECF No. 6-18.)  The trial court denied the motion by order entered August 16, 2018.  (ECF No. 6-21.)  Petitioner sought leave to appeal that decision in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered May 30, 2019, and October 29, 2019, respectively.  (Mich. Ct. App. Order, ECF No. 6-23, PageID.1177; Mich. Order, ECF No. 6-25, PageID.1319.)

On November 20, 2019, Petitioner filed his habeas corpus petition, raising five grounds for relief:

I.      Petitioner was denied due process when prosecutor did not correct perjury committed by key witness.

II.     Petitioner was denied due process when trial counsel did not object to the state witness and prosecutor misconduct.

III.    Petitioner was denied a fair trial when the trial judge failed to control the proceedings at all times.

IV.     Petitioner received ineffective assistance of appellate counsel when counsel abandoned legal representation.

V.      Petitioner was denied due process when trial counsel did not object to the state witness and prosecutor misconduct.

(Pet., ECF No. 1, PageID.6-13, 20-21.)

The Court promptly ordered Respondent to answer the petition, specifically directing Respondent to address whether the petition was timely.  (Order, ECF No. 3, PageID.29.)  Respondent answered the petition with a motion to dismiss it as untimely.  Respondent also filed the state court record.  Petitioner has filed a reply contending that his petition is timely.

4

## II.   Statute of Limitations

Respondent contends that Petitioner's application is barred by the one-year statute

of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as

part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214

(AEDPA).  Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of
>
> > (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year

limitations period is measured.  Under that provision, the one-year limitations period runs from

"the date on which the judgment became final by the conclusion of direct review or the expiration

of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  Petitioner appealed the judgment

of conviction to the Michigan Court of Appeals and the Michigan Supreme Court.  The Michigan

Supreme Court denied his application on March 8, 2016.  Petitioner did not petition for certiorari

to the United States Supreme Court.  The one-year limitations period, however, did not begin to

5

run until the ninety-day period in which Petitioner could have sought review in the United States Supreme Court had expired. *See Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The ninety-day period expired on June 6, 2016.

Petitioner had one year from June 6, 2016, until June 6, 2017, to file his habeas petition. Petitioner filed the present petition on November 20, 2019. Obviously he filed more than one year after the period of limitations began to run. Thus, absent tolling, his application is time-barred.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").

The post-appeal proceedings in the trial court followed a tortuous path. The undersigned concludes that the statute of limitations was tolled from November 23, 2016, the date Petitioner filed his "Request for Records"—which the trial court considered as an application for post-conviction review—to the date he could no longer appeal the trial court's denial of that application. *See Holbrook v. Curtin*, 833 F.3d 612, 619 (6th Cir. 2016) (holding that the statute of limitations is tolled during the period during which a decision denying collateral review could have been appealed). Michigan Court Rule 7.205(G)(3) allowed Petitioner six months to appeal the trial court's March 15, 2017, order denying relief, until September 15, 2017.[2]

---

[2] In the interim, Petitioner had filed *Katt I* and the petition was dismissed. That action did not toll the statute of limitations. *Duncan*, 533 U.S. at 181-82 (the limitations period is not tolled during the pendency of a federal habeas petition). Moreover, Petitioner filed and withdrew a motion for relief from judgment. That action would have tolled the period of limitation if it were not already tolled by the running of the appeal period for the March 15, 2017, order. Respondent acknowledges the six-month appeal period, but states that it ended during November of 2017. (Respondent's Mot., ECF No. 5, PageID.42 n.4.) That does not appear to be accurate.

The period of limitation ran from September 15, 2017, until October 10, 2017, when Petitioner again filed a motion for relief from judgment.  That motion tolled the running of the statute as long as it was pending:  until the Michigan Supreme Court denied leave to appeal on October 29, 2019.

Respondent contends that Petitioner's October 10, 2017, motion cannot toll the period of limitation because it was not "properly filed."  Respondent notes that it was not properly filed because it was an impermissible successive motion for relief from judgment.  Michigan Court Rule 6.502(G) provides that a defendant may file only one motion for relief from judgment and that the court "shall return without filing any successive motions for relief from judgment."  Mich. Ct. R. 6.502(G)(1).  In the trial court's August 16, 2018, order denying the motion, the court mentioned that the motion was properly rejected under that provision; but the court went on to address the merits of the motion under Michigan Court Rule 6.508(D) and denied the motion on the merits as well.

Certainly, if the trial court's decision were the only decision regarding the motion, Respondent's argument would have some persuasive force.  But the Michigan Court of Appeals and the Michigan Supreme Court spoke as well.  The Michigan Court of Appeals denied relief because Petitioner had "failed to establish that the trial court erred in denying the motion for relief from judgment."  (Mich. Ct. App. Order, ECF No. 6-23, PageID.1177.)  That language is vague enough to encompass denial under Rule 6.502 and/or Rule 6.508.  The Michigan Supreme Court, however, was more specific.  The supreme court denied relief because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  (Mich. Order, ECF No. 6-25, PageID.1319.)  That determination is based on the trial court's merits determination, not the

court's denial under Rule 6.502(G).  Accordingly, the undersigned concludes that the motion was "properly filed" and that it tolled the period of limitation until October 29, 2019.

Based on the state court record, therefore, the period of limitation ran from June 7, 2017, until November 23, 2016.  It commenced running again on September 16, 2017, until October 10, 2017.  Then, it ran for a few final days from October 30, 2019, until November 20, 2019.  Accordingly, Petitioner had about five months left in the period of limitations when he filed his petition.  He need not rely on arguments regarding equitable tolling or actual innocence to overcome Respondent's motion.  The undersigned recommends that Respondent's motion to dismiss be denied and will address the merits of Petitioner's claims.

## III.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "where the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This

presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546-547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### A.    Perjured testimony (habeas issue I)

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.  In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted).  Petitioner bears the burden of demonstrating that the testimony was actually perjured.  *Id.*  "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Id.*

Petitioner's "perjured testimony" claim in his habeas petition presents just a small subset of the many instances of "perjured testimony" that he presented to the trial court by way of his motion for relief from judgment.  *See* (Pet'r's Mot. for Relief From J., ECF No. 6-18, PageID.967-975.)  The trial court described this single-spaced, sparsely punctuated 8 pages of argument as a "convoluted," "stream of consciousness approach" that was "difficult for the Court to synthesi[ze] and summarize . . . ."  (*Id*., PageID.1098.)  Thankfully, in his petition, Petitioner identifies a few discrete instances where witnesses offered testimony that Petitioner characterizes as perjured.  Nonetheless, as set forth fully below, the record does not support that characterization.

1. **The prosecutor allowed witnesses to testify that magazines such as High Times, Weed World and Skunk were pornographic magazines.  This was used to bolster the testimony that Appellant masturbated all over the house.  Page 509, Book 2 of 3 lines 1-5.  (Pet., ECF No. 1, PageID.6.)**

During the trial, there was no specific reference to any of the three magazines identified by Petitioner.  It is possible that those magazines were among the magazines depicted in photographs introduced as exhibits.  There were many references to magazines containing nude persons or persons engaged in sex acts.  Those magazines may have been referred to as pornographic.  The undersigned could find no instance where the magazines identified by Petitioner were identified by witnesses as pornographic.  Moreover, there is nothing in the petition or the trial transcript to show that the identified magazines are, or are not, pornographic.  Similarly, there is nothing in the record to support Petitioner's contention that those particular magazines—as pornographic magazines—were used to bolster testimony that Petitioner masturbated all over the house.  Finally, there is nothing the undersigned could find in the record to support the underlying premise of Petitioner's argument:  that the prosecutor was aware of some falsehood underlying the testimony.  Petitioner's argument is groundless and frivolous.

2. **At trial it was testified that [the older victim] had bleeding from anal penetration.  This is contradicted by the testimony at the preliminary examination page 60, lines 6-7.  (Pet., ECF No. 1, PageID.6.)**

There was testimony at trial that the older victim had bleeding from his rectum and there was testimony that the older victim has endured anal penetration.  There is no testimony stating that the older victim had bleeding because of anal penetration.  At the preliminary examination testimony the older victim testified that he had not bled from anal penetration.  The undersigned does not see a direct inconsistency between the preliminary examination testimony and the trial testimony.  Even if there were such an inconsistency, however, inconsistent testimony does not suffice to establish the knowing use of false testimony.  Petitioner's argument is meritless.

3. **Ms. Mann's testimony is contradicted by the medical reports.  She testified that [the younger victim's] penis being cut, he was punched, and kicked.  Page 398 Book 2 of 3 lines 15-25 continued page 399 lines 1-5.  The medical reports do not support this testimony.  (Pet., ECF No. 1, PageID.6.)**

The record cite does not support Petitioner's contention at all.  The cited pages and lines do not say anything about the witness's examination of these victims.  The testimony addresses only the standard examination protocol.  Moreover, none of the testimony of the witness mentioned punches, kicks, or cuts.  Petitioner's argument is groundless and frivolous.

4. **[The older victim] testified that Defendant never beat him.  Page 339 Book 2 of 3 lines 3-10.  However, on redirect [the victim] changed his testimony lines 11-13.  [He] stated that Defendant would never hurt him.  Preliminary Examination page 48 lines 23-25 continued Page 49 lines 1-25, continued Page 50 lines 1-21.  (Pet., ECF No. 1-1, PageID.20.)**

The victim testified that Petitioner never beat him, just as Petitioner describes.  But the victim did not change his testimony regarding that issue on redirect.  In the cited testimony from the preliminary examination the victim does not make the statement that Petitioner attributes to the older victim—that Petitioner would never hurt him.  The inconsistencies claimed by Petitioner do not exist where he says they exist and, even if they did, they would not establish the knowing use of false testimony.  Petitioner's argument is groundless and frivolous.

5. **[The victims' mother] allegedly cut all contact with Defendant.  However, phone records, CPS and River Wood Psych reports prove otherwise.  [The younger victim's] last visit with Defendant was November 2012.  Preliminary Examination page 40 lines 3-8.  [The older victim's] testimony continued page 44 lines 15-19.  November 2012 was not [the younger victim's] last visit with Defendant.  Book 1 of 3 page 238 lines 15-19.  [The younger victim's] mother testified that [the younger victim] visited twice since November 2012.**

The testimony from the younger and older victims was far from precise.  The older victim testified that the younger stopped visiting around Thanksgiving and then later said there might have been one visit after that.  The younger victim testified that he stopped visiting after

Thanksgiving.  The mother testified that the younger victim stopped visiting after Thanksgiving, but then acknowledged there might have been a couple of visits after that.  The testimonial differences do not even amount to inconsistencies.  Petitioner has certainly failed to demonstrate that the prosecutor knowingly used false testimony.  Again, Petitioner's argument is groundless and frivolous.

> **6.    [The older victim] stated [the younger victim] witnessed acts with [the older victim] and Defendant Page 64 lines 8-11.  [The younger victim] never witnessed acts between [the older victim] and Defendant.  Book 1 of 3 page 237 lines 24-25, continued page 238 lines 1-3.  [The younger victim] did not know about acts between Defendant and [the older victim] page 258, lines 16-19.  [The younger victim] never seen acts with [the older victim.]  Page 370 lines 12-14.**

The testimony of the older victim is consistent throughout on this topic.  The testimony of the younger victim is consistent throughout on this topic.  The older victim states that the younger victim witnessed Petitioner sexually abusing the older victim.  The younger victim states that he did not witness Petitioner sexually abusing the older victim.  There is nothing in that scenario that establishes that the prosecutor knowingly used false testimony.  Petitioner's claim of prosecutorial misconduct is meritless and unsupported by the record.

**B.    Petitioner was denied due process when trial counsel did not object to the state witness and prosecutor misconduct (habeas issue II)**

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming

the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.  The state court applied the Strickland standard when rejecting Petitioner's ineffective assistance claims.  (Berrien Cnty. Cir. Ct. Order, ECF No. 6-21, PageID.1099-1100.)

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner contends his counsel rendered ineffective assistance because counsel failed to object to the prosecutorial misconduct and perjured testimony discussed in § III(A) herein.  For the reasons set forth above, however, Petitioner has failed to identify any prosecutorial misconduct or perjured testimony to which counsel might have legitimately objected.  The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"

*Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Therefore, Petitioner has failed to demonstrate the state court's rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, clearly established federal law. He is not entitled to habeas relief on this claim.

### C.    Petitioner was denied a fair trial when the trial judge failed to control the proceedings at all times (habeas issue III)

Petitioner's presentation of this issue in the trial court was much broader; it relied upon Petitioner's 8-page "stream of consciousness" argument.    The trial court addressed Petitioner's broad challenge without specifically addressing the issue of judicial bias.

In this Court, however, Petitioner has narrowed his focus to one paragraph:

> Sentencing transcript, page 36, lines 5-7, reference: Cotter's insults. Lines 13, 14 on judgment of urinating on kids relevant to this case.    Lines 15-20 reference: Judgment of Kyles impact statement, which no medical evidence supports due to lack of compassion by Angie Mann, and false threats to kill Kyle.    Lines 21-25, continued page 37, lines 1-25 continued page 38, lines 1-8 reference: Bias and prejudice by Judge Cotter.    Also lines 9-12 reference: His letter to the parole board (to make sure I never return to society).    Lines 13-18 reference: Appeal missing from record, continuing that and anguish with Mr. Sanford for informing me of my right to appeal, due to my continued claim of innocence throughout this case, and stating (I can't believe you would actually suggest that counselor, after all we have been through here today).    And Cotter interrogated me on the fact, if I so planned to appeal.    Page 3 lines 23-25, continued page 4, lines 1-25, continued page 5, lines 1-7 reference: Cotter taking judicial notice over supplements: after stating on record in court (Ms. Smith failed to do so, he stated he would), and (so chose to).    There are memory references not on this record missing from transcripts stating facts of bias and prejudicial remands about death, and no one attending my funeral or no one to visit me ever and that I don't deserve to ever be loved.

(Pet., ECF No. 1, PageID.9.)

All of Petitioner's examples of Judge Cotter's failures to control the proceedings relate to the sentencing.  In fact, examination of the specific transcript references shows that Petitioner's complaint is not really that Judge Cotter failed to control the proceedings, but that Judge Cotter, by his words on the record, demonstrated bias against Petitioner.[3]

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' [citation omitted], before a judge with no actual bias against the defendant or interest in the outcome of his particular case."  *Bracy v. Gramley*, 520 U.S. 899, 904-905 (1997).  However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias."  *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009) ("The difficulties of inquiring into actual bias . . . simply underscore the need for objective rules.").

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases:  (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Offut v. United States*, 348 U.S. 11, 17 (1954); *see also Taylor v. Hayes*, 418 U.S. 488 (1974); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905.  The courts indulge "a presumption of honesty

---

[3] The undersigned will not and cannot address those statements that Petitioner attributes to the trial judge from memory that are purportedly missing from the transcripts:  prejudicial remarks about no one attending Petitioner's funeral; no one visiting Petitioner ever; and that Petitioner did not deserve to be loved.  (Pet., ECF No. 1, PageID.9.)  Petitioner's allegation that the sentencing transcript is flawed because of these omissions is "conclusory [and] inadequate to enable a claim to proceed."  *Byars v. Gidley*, No. 16-2485, 2017 WL 4956919, at *2 (6th Cir. Jul. 3, 2017).  The undersigned will address only those statements by the trial judge that are matters of record.

and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) 421 U.S. at 47. "The presumption of impartiality stems not merely from the judicial-bias caselaw, *see* [*Withrow*], but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n. 4 (1997), and the even more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30-31 (1992); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)." *Coley*, 706 F.3d at 751.

In *Liteky v. United States*, 510 U.S. 540 (1994),[4] the Supreme Court described the showing Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.*, 384 U.S. at 583. In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's

---

[4] *Liteky* is a case that addresses the statutory recusal standard for federal judges. The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause. *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555-556 (emphasis in original).

The record amply supports the conclusion that the trial judge's statements at the sentencing were "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" and, thus, "do not constitute a basis for a bias or partiality motion . . . ." *Liteky*, 510 U.S. at 555-556.  All of the judge's comments which Petitioner finds objectionable express the judge's disgust arising from the evidence the judge heard regarding the crimes Petitioner committed and the impact of those crimes on the victims.  "It can be no surprise that the sentencing judge would express 'disgust' regarding an offense relating to" a sexual offense involving children.  *Contreras v. United States*, No. 08-11526, 2009 WL 1562701, at *2 (E.D. Mich. Jun. 3, 2009).  In *United States v. Lukasavitz*, No. 08-20499, 2013 WL 1703326 (E.D. Mich. Apr. 19, 2013), the district court explained the propriety of a strong reaction during sentencing for a child pornography distributor:

> "Anger and pity . . . may be felt both too much and too little . . . but to feel them at the right times, with reference to the right objects, towards the right people, with the right motive, and in the right way, is what is both intermediate and best, and this is characteristic of virtue."  Aristotle, Nicomachean Ethics, bk. II, ch. 5 (W.D. Ross transl.1908).  Lukasavitz, at his sentencing, received a calm, measured but firm reaction to the record and the conduct at hand.

*Lukasavitz*, 2013 WL 1703326, at *8.  Neither *Contreras* nor *Lukasavitz* bind this Court; but the reasoning is persuasive.  Thus, here, in light of the evidence presented to the trial court during Petitioner's trial and sentencing, the judge's reaction was objectively appropriate.  Certainly, Petitioner has failed to show that the state court's rejection of his bias claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on this claim.

### D.     Petitioner received ineffective assistance of appellate counsel when counsel abandoned legal representation (habeas issue IV)

Petitioner complains that appellate counsel raised only one issue on appeal and then informed Petitioner that he could file a supplemental *pro per* brief.  Petitioner claims he was not competent to file such a brief.  As a result, Petitioner argues that appellate counsel failed to raise the "dead bang winner" issues that Petitioner was compelled to raise in his motion for relief from judgment.  (Pet., ECF No. 1, PageID.11; Pet'r's Mot. for Relief From J., ECF No. 6-18, 984-986.)

The deferential *Strickland* standard also applies to ineffective assistance claims raised against appellate counsel.  But an appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  It is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.*

Although the trial court relied on state authority in setting out the standard it applied when rejecting Petitioner's claims, the standard was functionally identical to the clearly established federal law stated in *Strickland*, *Smith v. Murray*, and *Smith v. Robbins*.  (Berrien Cnty. Cir. Ct.

Order, ECF No. 6-21, PageID.8-9.)[5]  The trial court noted that the issues appellate counsel chose to leave out of the brief were the meritless issues Petitioner raised by way of his motion for relief from judgment.

As noted above, "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"  *Willis*, 351 F.3d at 745.  *See also Shaneberger,* 615 F.3d at 452; *Smith v. Bradshaw*, 591 F.3d at 523.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley*, 706 F.3d at 752.  Therefore, Petitioner has failed to demonstrate the state court's rejection of his ineffective assistance of appellate counsel claim is contrary to, or an unreasonable application of, clearly established federal law.  He is not entitled to habeas relief on this claim.

### E.    Petitioner was denied due process when trial counsel did not object to the state witness and prosecutor misconduct (habeas issue V)

This issue is virtually identical to habeas issue I.  Petitioner selects a subset of the myriad issues he raised in his motion for relief from judgment to present to this Court as habeas issue V.  The issues will be addressed as raised.

> **1.    The prosecutor lead Ms. Mann into making false statements of facts used as circumstantial evidence.  Ms. Mann fabricated her testimony and helped the prosecutor to secure an unjust conviction.  Book 2 of 3 Page 417 lines 17-24 she used mother's fabricated report to Dr. Rodriguez's facts to link false content to it and the fabricated medical history.  Ms. Mann falsely stated facts which were contradicted by [the older victim's] testimony.  Preliminary Examination page 60 lines 6- 7. [The older victim] never bled from sex, and page 374 Book 2 of 3, lines 11-16 rectal bleeding not from sex.**

The crux of Petitioner's complaint is that the nurse examiner's testimony can be read as suggesting that the older victim suffered rectal bleeding from sex.  Petitioner starts with

---

[5] The Berrien County Circuit Court order docketed as ECF No. 6-18 is missing page 10.  A complete copy of the order appears in the appellate court records.  (ECF No. 6-23, PageID.1182-1192.)

the older victim's testimony from the preliminary examination.  In that proceeding, the older victim testified that he never bled after Petitioner penetrated the victim's anus.  (Prelim. Exam. Tr., ECF No. 6-6, PageID.157.)  Petitioner accepts that as establishing the final truth and anything that contradicts it or supports a contrary inference violates his due process rights.

At trial, however, the older victim indicated that he had experienced bloody stools. (Trial Tr. II, ECF No. 6-11, PageID.599-600.)  He reported it occurred once and he saw Dr. Rodriguez regarding the issue.  (*Id.*)   He did not know if the bleeding was related to anal sex and he said they—presumably the medical professionals—did not know if it was related to anal sex either.  (*Id.*)  The nurse examiner testified that the older victim reported bleeding once after an incident of anal penetration and that she was aware that his medical history mentioned that the older victim had been checked out for rectal bleeding.  (*Id.*, PageID.643.)

There is no due process requirement that all of the testimony from all witnesses be consistent.  The "inconsistencies" Petitioner identifies might call into question the credibility of the testimony.  Petitioner was free to identify those inconsistencies in the testimony to the jury. There is nothing in the circumstances that Petitioner reports that gives rise to a constitutionally cognizable habeas claim.

> **2. Page 223 Book 1 of 3 lines 1-4 the prosecutor improperly introduced evidence not otherwise known or mentioned in testimony [during the questioning of the younger victim].  The prosecutor manipulated the testimony of the places w[h]ere the magazines were kept.**

The cited transcript does not support the complaint of manipulation.  The transcript reads as follows:

Prosecutor:    And then, looking again back at People's 38, we see the spiral staircase and then we see a bedroom, a bathroom, a room with a toolbox and then a mattress.

Witness:       Yes.

| | |
|---|---|
| Prosecutor: | Does that sound about right? |
| Witness: | Yeah. |
| Prosecutor: | Okay. Do you know-When I talk about the toolbox, do you know what I'm talking about? |
| Witness: | Yes. |
| Prosecutor: | And do you know if there was anything in that toolbox? |
| Witness: | Yes. |
| Prosecutor: | Do you know what was in there? |
| Witness: | There was magazines in it. |

(Trial Tr. I, ECF No. 6-10, PageID.448.)  There is no impropriety or manipulation evident in the transcript.

> **3.  [The older victim] was given suggestions as to how he should answer rather than allow him to use his own words.  Page 333 lines 1-11.  The Preliminary Examination page 31 contradicts the changed facts.**

The testimony cited in the trial transcript and the preliminary examination again relates to magazines and where they were kept.  The older victim also testified that the magazines were in a toolbox in the house, but he also noted that they were in a milk crate in the trailer.  That testimony varied from the preliminary examination transcript where the witness stated the magazines were under the couch or in the seats in the trailer and in the closet—perhaps in the toolbox—in the house.  Petitioner's contention that the prosecutor gave suggestions as to how the witness should answer is entirely unfounded and not supported by the transcripts.

4. **Medical reports from Dr. Rodriguez were suppressed. Book 1 of 3 page 4 lines 5-11 the evidence pertained to blood in [the older victim's] stool. The prosecution knew that [the older victim's] bleeding was not the result of sexual acts, but allowed the jury to believe it was. [The older victim] never bled from sex. Preliminary Examination page 60 lines 6-7.**

The transcript cited does not support the proposition that medical reports from Dr. Rodriguez were suppressed. Instead, it appears the prosecutor received them late from the doctor and then immediately turned them over to Petitioner's counsel. They were apparently used by Petitioner's counsel as the foundation for cross-examining Dr. Rodriguez two days later.

There is no record evidence that the prosecution knew that the older victim's bleeding was not the result of sex acts. There is no evidence that anyone knew with any degree of certainty whether the older victim's bleeding was or was not the result of sex acts, not even the older victim knew. Although the jurors may have concluded that the older victim suffered rectal bleeding as the result of sex acts, they certainly did not have to rely on that determination to conclude that Petitioner had participated in such acts. The victims' compelling testimony provided a sufficient foundation for any determination that Petitioner was guilty of the crimes charged, including anal penetration.

There is nothing in the Petitioner's statement of this issue that might give rise to a constitutional claim cognizable on habeas review.

5. **The prosecutor presented photographs to the jury of "bug bites" People's exhibit 33 Book 3 of 3 page 544 lines 13-15. This proves Defendant never poked [the younger victim] with a needle. Page 331 Book 2 of 3 lines 12-25.**

Petitioner complains because the prosecutor argued: "This father . . . who repeatedly poked [the younger victim's] hand with a needle in an effort to tattoo him even when [the younger victim] said he didn't want it, his own children." (Trial Tr. III, ECF No. 6-12, PageID.770.) Petitioner contends that the photographs on which the prosecutor relied showed only

bug bites, not needle pokes.  The citation offered by Petitioner to prove his point says nothing about bug bites or needle pokes.

The younger victim testified regarding the bug bite and the needle pokes.  (Trial Tr. I, ECF No. 6-10, PageID.453-458.)  The testimony fully supports the prosecutor's argument. Petitioner's attempt to claim that the photograph showed only "bug bites" appears to be wishful thinking.  There is no testimony in the record to support his claim.

> **6.  Over 40 exhibits were withheld from Defendant which was designed to alter the sequence of time line because the time line would have proved that children's mother lied about the last visit from [the younger victim] in November 2012. Book 1 of 3 page 257 lines 5-7 and 15-25, continued page 258 lines 1-15.**

The older victim, the younger victim, and their mother all testified about when the younger victim visited Petitioner for the last time.  Their testimony indicated the last visit occurred at or shortly after Thanksgiving, 2012, but the older victim and the mother indicated there may have been one or two visits thereafter.  The testimony of the mother cited above is generally consistent with the testimony of the children.  The mother confirmed the accuracy of trial Exhibit 40 regarding a timeline that reflected the victims' dates of birth and, apparently, their visits with Petitioner.  (Trial Tr. II, ECF No. 6-11, PageID.474-475.)

Petitioner argues repeatedly that the testimony regarding the timing of the younger victim's last visit is not true.  Petitioner does not explain when he contends the last visit occurred— before or after the date offered by the other witnesses—or why it matters.  Petitioner offers nothing to support his position.  He contends that "40 exhibits were withheld" to alter the timeline.  He does not identify the exhibits or how they disprove the timeline offered by all of the other witnesses.

In an effort to lend some meaning to Petitioner's argument on this point, the undersigned reviewed Petitioner's motion for relief from judgment to examine his efforts to

exhaust the issue in the state courts.  Petitioner offered argument there covering the same subject matter.  (Pet'r's Mot. for Relief From J., ECF No. 6-18, PageID.974-975.)  That argument, however, was not about the withholding of 40 exhibits, it was about Exhibit 40.  Petitioner contended that the exhibit was false, apparently because it reflected the testimony of the mother and the victims that the younger victim's last visit occurred around Thanksgiving, 2012.  In his state court collateral attack, Petitioner offered another version of a timeline that shows that the younger victim continued to visit during December of 2012 and a few times during 2013.  (Mot. Exhibit G, ECF 6-18, PageID.1042-1042.)  The authorship and authenticity of the exhibit is not clear.

Whatever light Petitioner's state court arguments cast on this issue is not sufficient to show a cognizable habeas claim.  Petitioner contends that the mother and the victim lied about the timeline.  He offers no record evidence to support his claim.  The trial court's rejection of it was unassailably reasonable.  Petitioner has failed to show that the trial court's determination is contrary to, or an unreasonable application of, clearly established federal law.  Therefore he is not entitled to relief on his final habeas claim.

## IV.    Certificate of appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have

examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, for the same reasons I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I also conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Recommended Disposition

For the foregoing reasons, I recommend that Respondent's motion to dismiss the petition as untimely (ECF No. 5) be denied and that the habeas corpus petition be denied on the merits.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court certify that an appeal would not be taken in good faith.

Dated:    January 8, 2021                          /s/ Ray Kent
                                                   Ray Kent
                                                   United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).